UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY MARSHAK,

                Petitioner,

-against-

ORIGINAL DRIFTERS, INC. and ESTATE
OF WILLIAM PINKNEY,

                Respondents.

**ORDER**

19 Civ. 7035 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Petitioner Larry Marshak has filed a petition to vacate an April 30, 2019 arbitration award (the "Award"). Respondents Estate of William Pinkney and Original Drifters, Inc. ("ODI") have moved to dismiss the petition pursuant to Fed. R. Civ. P. 12(b)(6), arguing that service of the notice of petition was untimely under 9 U.S.C. § 12. The Court concludes that service of the notice of petition was in fact untimely. Accordingly, Respondents' motion to dismiss will be granted.

## BACKGROUND

### I.    FACTS[1]

        This action arises out of Marshak's claim that Respondents have unlawfully interfered with his right to "The Drifters" mark. (Arb. Demand (Dkt. No. 6-1)) In 1953, the late

---

[1] The Court's factual account is drawn from the Petition and the papers annexed thereto. See, e.g., Int'l Eng'g & Constr. S.A. v. Baker Hughes, 399 F. Supp. 3d 194, 198-99 (S.D.N.Y. 2019) ("'A court is generally confined to the facts alleged in the petition for the purposes of considering a motion to dismiss pursuant to 12(b)(6). . . . A court may, however, consider documents attached to the petition, statements or documents incorporated into the petition by reference, matters of which judicial notice may be taken, public records, and documents that the petitioner either possessed or knew about, and relied upon, in bringing the suit.'") (internal alterations omitted) (quoting G.distributors, LLC v. Scanlon, No. 18 Civ. 2101, 2018 WL 6329444, at *3 (S.D.N.Y. Dec. 3. 2018)). The Petition's factual allegations are discussed solely

singer Clyde McPhatter founded a musical group called The Drifters. (Pet. Prehearing Arb. Br. (Dkt. No. 6-8 at 4)[2]) Bill Pinkney was initially part of the group, but he was fired in 1956. (Id. at 4-5) After Pinkney left, The Drifters were led by Charlie Thomas and Doc Green. (Id. at 4) The Drifters recorded several songs that became top-ten hits on U.S. pop music charts between the late 1950s and mid-1960s. (Id. at 4-5)

In 1958, Pinkney began performing under the names "Bill Pinkney's Original Drifters" and "The Original Drifters." (Id. at 4) Unlike The Drifters, Pinkney performed traditional blues and gospel-inspired music. (Id. at 5) At some point, a dispute arose as to who owned "The Drifters" name. (Id.) In about 1958, Pinkney and Thomas agreed to resolve the issue in arbitration before the American Guild of Variety Artists ("AGVA"). (Id.) As a result of that arbitration, Pinkney obtained rights to the names "Bill Pinkney's Original Drifters" and "The Original Drifters," and Thomas obtained rights to "The Drifters." (Id.)

In about 1970, Petitioner Marshak began managing The Drifters, and Thomas assigned his rights in "The Drifters" mark to Marshak. (Id. at 6) In 1978, Marshak registered the mark with the U.S. Trademark Office, which assigned it Trademark Registration No. 1,081,338 ("'338 Registration"). (Resp. Mot. To Dismiss Arb. Demand (Dkt. No. 6-14) ¶ 8; 1996 Consent Judgment (Dkt. No. 6-11) ¶ 3)

In the early 1980s, Marshak learned that a Pinkney-affiliated group was performing as The Drifters. (Pet. Prehearing Arb. Br. (Dkt. No. 6-8) at 6) Marshak and Pinkney

---

as background. See Boyles v. Cunard Line Ltd., No. 93 Civ. 5472 (CES), 1994 WL 449251, at *4 n.1 (S.D.N.Y. Jan. 11, 1994) ("Since the motion before the Court raises solely a statute of limitations issue, based on undisputed facts, this description of the complaint is provided for background only.").
[2] Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

met and, in October 1981, agreed that – in accordance with the outcome of the AGVA arbitration – Pinkney would perform as The Original Drifters, and Marshak's groups would perform as The Drifters. (Id.)

The 1981 agreement became the subject of litigation in the U.S. District Court for the Western District of North Carolina. (Id.) In 1983, Pinkney and Marshak resolved that litigation by entering into a consent judgment. (Id. at 6-7) Marshak later sued Michael Bridge, an agent who promoted Pinkney performances, in the Western District of North Carolina, and Bridge impleaded Pinkney as a third-party defendant. (Id. at 7) That case was resolved in 1996 after Marshak and Pinkney entered into a new consent judgment. (Id.) As part of the 1996 consent judgment, Marshak and Pinkney agreed that:

- Marshak is the owner of U.S. Service mark Reg. No. 1,081,338 for the incontestable service mark THE DRIFTERS to identify entertainment services, namely a singing group, and has the unqualified and exclusive right to use throughout the United States the name or mark THE DRIFTERS to identify a musical performing group, and enjoy the exclusive good will deriving therefrom.

- Willie B. Pinkney . . . [is] permanently enjoined from representing to any third party, directly or indirectly, that [he has] the right to use the name or mark "THE DRIFTERS" to identify any musical performing group other than the musical performing group owned or controlled by Larry Marshak, and Willie B. Pinkney will not knowingly authorize any third party to represent that Willie B. Pinkney or his musical performing group is THE DRIFTERS.

- Willie B. Pinkney has the unqualified right during his lifetime to use throughout the entire United States for one performing group the name or mark "THE ORIGINAL DRIFTERS" and the name or mark "BILL PINKNEY and (or &) THE ORIGINAL DRIFTERS" to identify a musical performing group.

- All disputes between the parties arising out of or related to this Consent Judgement shall be submitted to arbitration by a single arbitrator under the rules of the American Arbitration Association in any forum that is proper.

(1996 Consent Judgement (Dkt. No. 6-11) ¶¶ 3-5, 16)

In 1999, in connection with a case in which Pinkney was not a party, the U.S. District Court for the District of New Jersey found that Marshak's '338 Registration was void <u>ab initio</u> because it was fraudulently obtained. (Pet. Prehearing Arb. Br. (Dkt. No. 6-8) at 9); <u>Larry Marshak v. Fay Treadwell</u>, 58 F. Supp. 2d 551 (D.N.J. 1999), <u>aff'd</u>, 240 F3d 184 (3d Cir. 2001). The New Jersey district court "enjoined Marshak . . . from promoting groups performing under the name of The Drifters . . . and [the Third Circuit] . . . affirmed." <u>Marshak v. Treadwell</u>, 595 F.3d 478, 483 (3d Cir. 2009) (citing <u>Marshak v. Treadwell</u>, No. 95-CV-3794, Dkt. No. 409-2 (D.N.J. Aug. 16, 1999); <u>Marshak</u>, 240 F.3d at 200).

The New Jersey district court rejected Marshak's claim that the 1983 and 1996 consent judgments afforded him any rights to "The Drifters" mark, noting that both consent judgments were premised on the false notion that Marshak was the rightful owner of "The Drifters" mark. <u>Marshak v. Treadwell</u>, No. CIV.A.95-3794(DRD), 2007 WL 2687454, at *21 (D.N.J. Sept. 10, 2007), <u>aff'd in relevant part, rev'd in part on other grounds</u>, 595 F.3d 478 (3d Cir. 2009). Given the district court's finding that the '338 Registration was obtained through fraud, those consent judgments had been "effectively vitiated." <u>Id.</u>; <u>see</u> also <u>Marshak</u>, 595 F.3d at 489 n.8 ("The consent agreement signed by Marshak and Pinkney stated that Marshak was the legal holder of The Drifters mark. . . . Accordingly, the only trademark rights discussed in the consent agreement were those held by Marshak, which were subsequently invalidated . . . as being procured by fraud. . . . [T]he consent agreement with Pinkney does not offer [Marshak] an alternate basis for using The Drifters mark.").

Pinkney died in July 2007. (Pet. Prehearing Arb. Br. (Dkt. No. 6-8) at 11) In August 2007, the personal representative of Pinkney's Estate purportedly assigned rights to the

4

"Bill Pinkney's Original Drifters" mark to ODI for $10. (Id. at 2-3, 11) ODI has since promoted its own musical group, claiming that it represents Pinkney's legacy. (Id. at 2-3, 13)

## II. THE ARBITRATION PROCEEDING AND AWARD

On February 2, 2016, Marshak filed a demand for arbitration claiming that Respondents violated the 1996 Consent Judgment which, according to Marshak, afforded him the "exclusive right to use the mark 'The Drifters'" without interference. (Arb. Demand (Dkt. No. 6-1); Award (Dkt. No. 6-2) at 5) On February 24, 2016, Respondents moved to dismiss the arbitration demand arguing, inter alia, that the Pinkney Estate was not properly named, because the estate was closed in March 2009. (Resp. Mot. To Dismiss Arb. Demand (Dkt. No. 6-14) ¶¶ 2, 6) The arbitrator dismissed the Pinkney Estate from the arbitration, finding that "Marshak had no standing to bring a claim against the Estate with respect to the allegedly improper assignment of any Estate assets to [ODI]." (Award (Dkt. No. 6-2) at 5; Mar. 9, 2019 Arbitrator Email (Dkt. No. 6-7)) Marshak's claims against ODI proceeded to a hearing before the arbitrator on March 12 and 13, 2019, in New York City. (Award (Dkt. No. 6-2) at 5) Post-hearing briefing was submitted on April 15, 2019. (Pet. Post-Hearing Arb. Br. (Dkt. No. 6-9))

In an April 29, 2019 decision, the arbitrator denied Marshak's claim that ODI had interfered with his rights to use the "The Drifters" mark. (Award (Dkt. No. 6-2) at 5) The arbitrator found that when Pinkney entered into the 1996 Consent Judgment, he did so based on "Marshak's representation that THE DRIFTERS mark he claimed to own . . . (the '338 Registration') was valid and enforceable." (Id. at 6) The arbitrator concluded, however, that The Drifters mark was not valid and enforceable, and indeed was "void[], ab initio, on the basis of having been fraudulently obtained." (Id. (citing Marshak, 58 F. Supp. 2d at 551))

The arbitrator further found that the "1996 Consent Judgment was essentially vitiated as it pertained to Marshak's trademark claim." (Id. (citing Marshak, 2007 WL 2687454, at *36-37) As explained by the arbitrator, the Third Circuit "confirmed that Marshak did not obtain any rights to THE DRIFTERS mark as a result of the 1996 Consent Judgment because it was based on the 338 Registration cancelled due to fraud." (Id. at 6) Accordingly, the "1996 Consent Judgment cannot be used by [Marshak] as the basis to challenge, to seek to prevent or to otherwise interfere with ODI's use of THE DRIFTERS mark, THE ORIGINAL DRIFTERS mark or BILL PINKNEY'S ORIGINAL DRIFTERS mark. Nor, could [ODI] have interfered with Marshak's attempted use of THE DRIFTERS mark since he has no legal basis to use it with respect to the performance of any groups he seeks to book as The Drifters, the sale of The Drifters merchandise or for any other reason." (Id.)

### III. PROCEDURAL HISTORY

The Award was delivered to the parties on April 30, 2019. (Apr. 30, 2019 email and letter (Dkt. No. 6-2) at 2-3) On July 29, 2019, Marshak commenced this action by filing a petition to vacate the arbitration award. (Notice of Pet. (Dkt. No. 4); Pltf. Br. (Dkt. No. 5)) A summons as to both Respondents was issued on August 12, 2019. (Dkt. Nos. 13, 14) Respondent ODI was served on October 10, 2019. (Dkt. No. 18) Although the Estate contends that it was never served (Resp. Br. (Dkt. No. 25-1) at 9), Marshak's counsel states that "[o]n October 28, 2019, the day that [Respondents' counsel] was granted [pro hac vice] admission to appear on the Estate's behalf, [counsel] served him electronically with a copy of the petition to vacate and all related documents." (Sommers Decl. (Dkt. No. 26-2) ¶ 12)

6

Respondents moved to dismiss the Petition on January 24, 2020, arguing that it was not timely served under Section 12 of the Federal Arbitration Act.[3] (Resp. Br. (Dkt. No. 25-1) at 7-9)

## DISCUSSION

## I.  **LEGAL STANDARD**

Section 12 of the Federal Arbitration Act governs notice of motions to vacate an arbitration award, and provides as follows:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. . . .

9 U.S.C. § 12.[4]

---

[3] Respondents also contend that Marshak has not shown that the arbitrator "manifestly disregarded the law." (Resp. Br. (Dkt. No. 25-1) at 9-12) The parties have agreed by stipulation, however, that the Court will "first address" Respondents' "argument that the petition should be dismissed as untimely under the Federal Arbitration Act, 9 U.S.C. § 12." (Stipulation and Order (Dkt. No. 24) ¶ 1) Accordingly, this Order addresses only that issue.

[4] 9 U.S.C. § 9 – which addresses confirmation of an arbitration award – contains similar language as to service:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the

7

The statute offers "[n]o exception" to the three-month service period. Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984); see also Hamilton v. Navient Sols., LLC, No. 18 Civ. 5432 (PAC), 2019 WL 633066, at *4 (S.D.N.Y. Feb. 14, 2019) ("'[T]he Second Circuit has made clear that there is no exception to this three month limitation period.'") (quoting Kruse v. Sands Bros. & Co., 226 F. Supp. 2d 484, 486 (S.D.N.Y. 2002)). "While it may appear to be harsh to strictly enforce the time provision, it must be noted that the goal of arbitration is to settle disputes efficiently and to avoid the cost of long term, expensive litigation." Hamilton, 2019 WL 633066, at *4 (dismissing petition "served one day late"); see also Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) (noting that judicial review of arbitration awards is "very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation"). A party therefore "may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run." Florasynth, 750 F.2d at 175.

## II.    APPLICATION

The parties received the arbitrator's award on April 30, 2019. (Apr. 30, 2019 email and letter (Dkt. No. 6-2) at 2-3) Accordingly, in order to be timely, notice of a motion to vacate had to be served "three months" later, or by July 30, 2019. 9 U.S.C. § 12. Here, the summonses were not issued until August 12, 2019 – almost two weeks after the deadline to complete service (Dkt. Nos. 13, 14) – and ODI was not served until October 10, 2019, more than two months after the service deadline. (Dkt. No. 18) The Pinkney Estate was served (if at all)

---

        same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

9 U.S.C. § 9.

on October 28, 2019 – nearly three months after the deadline. (Sommers Decl. (Dkt. No. 26-2) ¶ 12 (alleging that service was made on the Estate's counsel on October 28, 2019); Resp. Br. (Dkt. No. 26-1) at 9 (denying service)) Because service on both Respondents was untimely, the petition must be dismissed. Florasynth, 750 F.2d at 175; Hamilton, 2019 WL 633066, at *4; see also Lobaito v. Chase Bank, No. 11 Civ. 6883 (PGG), 2012 WL 3104926, at *5 (S.D.N.Y. July 31, 2012), aff'd, 529 F. App'x 100 (2d Cir. 2013) ("'The period provided for in 9 U.S.C. § 12 is a statute of limitations and the failure to bring a timely motion is an absolute bar to an application seeking vacatur or modification.'") (alternation omitted) (quoting Ne. Sec., Inv. v. Quest Capital Strategies, Inc., No. 03 Civ. 2056 (RWS), 2003 WL 22535093, at *2 (S.D.N.Y. Nov. 7, 2003)).

Marshak's attempts to excuse his untimely service are not persuasive. Marshak argues that 9 U.S.C. § 12 implicitly incorporates the time limitations for service set forth in Rule 4(m) of the Federal Rules of Civil Procedure. (Pet. Opp. (Dkt. No. 26) at 11-12) As a result, Marshak had 90 days to complete service after commencing this action, and this Court can extend the deadline for service for good cause.[5] (Pet. Opp. (Dkt. No. 26) at 11-12) But Marshak cites no authority in support of this interpretation of 9 U.S.C. § 12, and courts have rejected it. See Hamilton, 2019 WL 633066, at *4 ("[T]he Federal Rules of Civil Procedure only govern applications made under the [Federal Arbitration Act ('FAA')] to the extent that procedures are not provided for in the FAA. As the FAA creates a strict three-month limitations period from the date of entry of an award for a party to serve an application to vacate, Fed. R. Civ. P. 4(m) does

---

[5] Fed. R. Civ. P. 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

not extend the period of service to be 90 days after filing of a complaint or other termed application for vacatur."); see also Dalal v. Goldman Sachs & Co., No. CIV.A.06 1061 EGS, 2007 WL 1334972, at *2 (D.D.C. May 7, 2007) (dismissing Federal Arbitration Act claim because service was effectuated after three-month deadline set forth in 9 U.S.C. § 12, but extending plaintiff's time to effect service with respect to non-Federal Arbitration Act claims pursuant to Rule 4(m)).

Courts have interpreted the phrase "in like manner as other process of the court" – as used in 9 U.S.C. §§ 9 and 12 – to refer to the manner of service authorized by Fed. R. Civ. P. 4. See In re Coudert Bros. LLP, No. 06-12226 (RDD), 2017 WL 2911589, at *4 (Bankr. S.D.N.Y. July 6, 2017) ("The Second Circuit has noted that the final sentence in Section 9 describing that service on nonresidents requires that service be 'in like manner as other process by the court' means that a plaintiff seeking to confirm an arbitration award need only comply with the requirements of Fed. R. Civ. P. 4 for initial service of process of regular civil suits.") (citing Reed v. Martin, Inc. v. Westinghouse Elec. Corp., 439 F.2d 1268, 1277 (2d Cir. 1971)).

Although courts rely on Rule 4 to determine whether the "method of service" in Title 9 cases is proper, see, e.g., Matter of Arbitration between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp. Corp., 146 F.R.D. 64, 67 (S.D.N.Y. 1993) (noting that 9 U.S.C. § 12 "provides no method of service for foreign parties not resident in any district of the United States, and that the proper fallback provision for service of process is Fed. R. Civ. P. 4"), the time periods of Rule 4(m) do not trump the three-month time limitation set forth in 9 U.S.C. § 12. To the contrary, Fed. R. Civ. P. 81(a)(6)(B) makes clear that the Federal Rules of Civil Procedure apply to judicial review of arbitration awards only to the extent that "9 U.S.C., relating to arbitration" does not "provide other procedures." Fed. R. Civ. P. 81(a)(6)(B). While

the Federal Rules of Civil Procedure fill voids not covered by Title 9, they do not supersede Title 9's express requirements, including the time limitations for serving a notice of motion to vacate an arbitration award. See Kruse, 226 F. Supp. 2d at 485-86 ("Rule 81(a)(3)[6] of the Federal Rules of Civil Procedure states, in part: 'In proceedings under Title 9, U.S.C., relating to arbitration . . . [the Federal Rules of Civil Procedure] apply only to the extent that matters of procedure are not provided for in those statutes.' Fed. R. Civ. P. 81(a)(3) . . . The availability of vacatur is . . . limited by the Federal Arbitration Act. Section 12 provides that 'Notice of a motion to vacate . . . an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.' 9 U.S.C. § 12. The Second Circuit has made clear that there is no exception to this three month limitation period. . . .") (citing Folkways, 989 F.2d at 111).

Marshak argues that his time to serve ODI should be equitably tolled, because he has had difficulty serving ODI in connection with other matters. (Pet. Opp. (Dkt. No. 26) at 12-13; McIntosh Decl. (Dkt. No. 26-1) ¶¶ 1-6; Sommers Decl. (Dkt. No. 26-2) ¶¶ 3-11) Even assuming arguendo that Marshak's experience in connection with other litigation against ODI is relevant here, the deadlines set forth in 9 U.S.C. § 12 are not subject to equitable tolling. See Hamilton, 2019 WL 633066, at *4 ("Even where a litigant 'confronts obstacles to the prompt service of her pleading . . . because she must wait until the Clerk processes her complaint, that would not excuse her non-compliance with [9 U.S.C. § 12's] notice requirement.'") (quoting Santos v. Gen. Elec. Co., No. 10 CIV. 6948 (JSR) (MHD), 2011 WL 5563544, at *7 (S.D.N.Y. Sept. 28, 2011), adopted by, 2011 WL 5563536 (S.D.N.Y. Nov. 15, 2011)); DeGrate v. Broad. Music, Inc., No. 12 CIV. 1700 (RJS) (JLC), 2013 WL 639146, at *3 (S.D.N.Y. Feb. 20, 2013)

---

[6] In the current Federal Rules of Civil Procedure, the applicable provision is Rule 81(a)(6), not 81(a)(3).

("Plaintiff's . . . tolling argument . . . fail[s] as a matter of law. As the Second Circuit has made clear: '. . . [T]here is no common law exception to the three month limitations period on the motion to vacate.'") (quoting Florasynth, 750 F.2d at 175); Triomphe Partners, Inc. v. Realogy Corp., No. 10 Civ. 8248 (PKC), 2011 WL 3586161, at *3 (S.D.N.Y. Aug. 15, 2011) ("Equitable tolling does not apply in this case.") (citing Florasynth, 750 F.2d at 175).

Finally, as to the Pinkney Estate, Marshak notes that 9 U.S.C. § 12 governs the time to serve an "adverse party," and points out that the Estate "did not appear in the arbitration, was not represented, and was dismissed by the arbitrator." (Pet. Opp. (Dkt. No. 26) at 9-10) Marshak goes on to contend that the Pinkney Estate was a "non-party" to the arbitration and cannot be considered an "adverse party" for purposes of 9 U.S.C. § 12. (Id.)

Marshak's argument is not persuasive, because the Pinkney Estate was in fact an "adverse party" in the arbitration. Marshak named William Pinkney as a respondent in his demand for arbitration (Arb. Demand (Dkt. No. 6-1)) – either unaware or in disregard of the fact that Pinkney was deceased – and the captions of all subsequent arbitral filings, including Marshak's own filings, list the Pinkney Estate as a respondent. (See, e.g., Award (Dkt. No. 6-2) at 2; Pet. Mot. To Stay (Dkt. No. 6-3); Sommers Decl. (Dkt. No. 6-4); Massey Decl. (Dkt. No. 6-5); Pet. Prehearing Arb. Br. (Dkt. No. 6-8); Pet. Post-hearing Arb. Br. (Dkt. No. 6-9)) Accordingly, the Pinkney Estate was plainly substituted as a party.[7] (Resp. Mot. To Dismiss Arb. Demand (Dkt. No. 6-14)) The fact that the arbitrator dismissed Marshak's claim against the

---

[7] Marshak's suggestion that counsel lacked proper authorization to represent the Pinkney Estate (Dkt. No. 28) has no bearing on its status as a party under 9 U.S.C. § 12. The Pinkney Estate was a party to the arbitration by virtue of Marshak naming the then-deceased Pinkney as a respondent in his demand for arbitration, and then proceeding against the Pinkney Estate in the subsequent arbitration.

12

Pinkney Estate prior to the hearing as utterly unfounded (Award (Dkt. No. 6-2) at 5) does not alter the fact that the Pinkney Estate was an "adverse party" in the arbitration.

## CONCLUSION

For the reasons stated above, Petitioner's motion to vacate the arbitration award (Dkt. No. 4) is denied, and Respondents' motion to dismiss (Dkt. No. 25) is granted. All other pending motions are denied as moot.[8] The Clerk of Court is directed to terminate the motions and to close this case.

Dated: New York, New York
March 9, 2020

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge

---

[8] Given that the underlying petition is dismissed, Willie Terrell Woods's motion to intervene (Dkt. No. 29) is denied as moot. See Music Choice v. Claggett, 385 F. Supp. 3d 245, 250 (S.D.N.Y. 2019) ("Because the Complaint is dismissed, SoundExchange's motion to intervene is DENIED as moot."); Sagaponack Realty LLC v. Vill. of Sagaponack, No. 217CV5277DRHSIL, 2018 WL 4259988, at *6-*7 (E.D.N.Y. Sept. 6, 2018) ("Given that this case is now dismissed in its entirety, the Proposed Intervenor Defendants' motion to intervene and dismiss is denied as moot."), aff'd, 778 Fed. Appx. 63 (2d Cir. 2019); Andrews v. Sony/ATV Music Publ'g, LLC, No. 15-CV-7544 (AJN), 2017 WL 770614, at *9 (S.D.N.Y. Feb. 24, 2017) ("'where the action in which a litigant seeks to intervene has been discontinued, the motion to intervene is rendered moot'") (quoting Kunz v. N.Y.S. Comm'n on Judicial Misconduct, 155 Fed. Appx. 21, 22 (2d Cir. 2005)).

13